***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Homick and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. The parties agree that this case is subject to the North Carolina Workers' Compensation Act.
3. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
4. An employment relationship existed between plaintiff and defendant-employer on the date of injury, which occurred on or about March 27, 2009.
5. Plaintiff alleges that he injured his back by accident or specific traumatic incident on or about March 27, 2009. Defendants have denied compensability.
6. Plaintiff's average weekly wage is stipulated to be $491.15, with a compensation rate of $327.45.
7. At hearing, plaintiff testified through the assistance of a Spanish language interpreter, Liliana Camara. The parties stipulated to the qualifications of Ms. Camara as an interpreter, pursuant to Rule 616 of the Workers' Compensation Rules of the North Carolina Industrial Commission.
8. The parties stipulated to the admissibility of the following documents, which were received into evidence:
 • Stipulated Exhibit 1: Pre-Trial Agreement;
 • Stipulated Exhibit 2: North Carolina Industrial Commission forms and documents, medical records and employment information;
 • Plaintiff's Exhibit 1: Plaintiff's wage records; *Page 3 
 • Plaintiff's Exhibit 2: Plaintiff's employment and pay information from Excel and Ameristaff/AARCO;
 • Plaintiff's Exhibit 3: Plaintiff's Affidavit;
 • Defendants' Exhibit 1: June 12, 2009 letter;
 • Defendants' Exhibit 2: Handwritten notes of Lori Purdy, Human Resources Manager for defendant-employer;
 • Defendants' Exhibit 3: Statement of Sims Carter, Technical Manager for defendant-employer;
 • Defendants' Exhibit 4: Statement of Jerry Johnson, plaintiff's supervisor; and
 • Defendants' Exhibit 5: Termination Report.
9. The issues for determination by the Full Commission are whether plaintiff sustained a compensable injury by accident on or about March 27, 2009 and if so, to what medical and indemnity benefits are plaintiff entitled. In addition, plaintiff requested determination of whether defendants unjustifiably refused to pay for medical and wage loss benefits and therefore should be required to pay penalties, sanctions and attorney's fees, and defendants requested determination of whether plaintiff pursued this claim without reasonable grounds.
 ***********
Based upon all the competent, credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT *Page 4 
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 39 years old. Plaintiff completed elementary school in Mexico but, as he testified through an interpreter, he does not read or write well in either Spanish or English. Plaintiff's native and primary language is Spanish.
2. Plaintiff began working for defendant-employer in 1999 as a mechanic, or a "first shift fixer," where his primary job responsibilities included repairing machines.
3. On March 27, 2009, plaintiff testified that he was changing a gear box on a machine when the gear box slipped from his hand. Although plaintiff felt a burning pain in his lower back, plaintiff continued to work that day.
4. Plaintiff testified he thought "it was going to be okay," and therefore did not report the injury to defendant-employer the day it occurred.
5. Plaintiff also indicated that he informed his supervisor, Jerry Johnson, on April 1, 2009, that his back was hurting and requested to go to the doctor, but Mr. Johnson did not listen to him. However, Mr. Johnson did not confirm this statement. Mr. Johnson testified that he did speak with plaintiff about his back and inquired whether plaintiff injured his back at work, but plaintiff informed him he did not sustain a work injury.
6. Plaintiff also stated that he informed Sims Carter, the technical manager for defendant-employer, that his back was hurting and requested to go to the doctor.
7. At the hearing before the Deputy Commissioner, Mr. Carter indicated that plaintiff did ask if he could leave work to see a doctor. Mr. Carter also stated that when he asked plaintiff whether he had injured his back at work, plaintiff responded that he had not. *Page 5 
8. Plaintiff testified that on March 27, 2009, he informed several co-workers that he sustained an injury to his back at work. Of the three co-workers that plaintiff informed about a work injury, only Lorraine Mills testified.
9. Lorraine Mills, a co-worker of plaintiff's, testified that plaintiff informed her of the injury in March 2009, and, in turn, she instructed plaintiff to report the injury to a supervisor. However, attendance records received into evidence reveal that Ms. Mills was not at work on March 27, 2009, nor the following week. Plaintiff disputed the authenticity of the attendance records and objected to their introduction.
10. On April 1, 2009, plaintiff initially presented to Dr. Eric Blundy, a chiropractor, at Sexton Family Chiropractic with complaints of low back pain beginning "about one week ago." Myra Burgess, a chiropractic assistant, testified that she specifically asked plaintiff what caused his pain and he replied that he did not know. Ms. Burgess also asked plaintiff if an accident may have caused the problem which plaintiff denied.
11. John Garner, vice president of operations for defendant-employer, testified that in late April 2009, he and plaintiff met regarding plaintiff's high deductible and co-payment for health insurance. Mr. Garner testified that the sole purpose of this meeting was plaintiff's inquiry about the high insurance deductible, and plaintiff did not mention sustaining a work-related injury.
12. Plaintiff continued to present to Sexton Family Chiropractic through May 2009, where he was also treated by Dr. Monette Sexton and Dr. William Sexton. However, the medical records do not specifically reference a work-related injury. As Dr. Monette Sexton and Dr. William Sexton subsequently retired from practice and moved to Thailand, they were unavailable to testify. *Page 6 
13. On or about May 11, 2009, plaintiff's wife presented to Sexton Family Chiropractic and informed Angelica Lakis, the office assistant, that plaintiff injured his back at work. Plaintiff's wife asked Ms. Lakis to contact Lori Purdy, the human resources manager at defendant-employer, to see if workers' compensation would pay for plaintiff's chiropractic visits.
14. On May 11, 2009, Amber Southard, a chiropractic assistant with Sexton Chiropractic, contacted Ms. Purdy to inquire if plaintiff's symptoms were related to a work injury. After receiving this telephone call, Ms. Purdy met with plaintiff, Mr. Garner and Mr. Carter to investigate whether plaintiff had experienced a work injury. At the hearing, Ms. Purdy, Mr. Garner, and Mr. Carter testified that plaintiff informed them that his back was hurting, but he did not relate it to a work injury.
15. Ms. Purdy further testified that plaintiff appeared unsure when she asked him why Sexton Family Chiropractic inquired about whether plaintiff's symptoms were related to a work injury. According to Mr. Garner, during the meeting plaintiff was focused on paying his bills.
16. On June 15, 2009, plaintiff filed a Form 18 Notice ofAccident to Employer for a work accident on March 27, 2009.
17. On June 25, 2009, defendants denied plaintiff's claim with the filing of a Form 61 Denial of Workers' Compensation Claim.
Defendants subsequently amended this form on January 7, 2010.
18. On July 27, 2009 plaintiff was laid off from his employment with defendant-employer due to a reduction in workforce which also affected approximately fifteen other employees. Plaintiff's position as first shift fixer was eliminated. *Page 7 
19. At the hearing before the Deputy Commissioner, Mr. Garner indicated that he was never aware that plaintiff was experiencing any difficulties performing his job. Mr. Garner stated that from March 27, 2009 until the date of layoff, plaintiff worked full duty.
20. Mr. Garner also testified that he and plaintiff were able to communicate effectively in English, and plaintiff had even assisted in translating for other employees who could not speak English.
21. The Full Commission finds the testimony of Mr. Johnson, plaintiff's supervisor, Mr. Carter, the technical manager, Ms. Purdy, the human resources manager and Mr. Garner, the vice president of operations, to be credible and gives greater weight to their testimony than to that of plaintiff.
22. Subsequent to his layoff, and more than seven months after the March 27, 2009 alleged incident, on November 4, 2009, plaintiff presented to Dr. Kofi Doonquah, a neurologist, who reviewed plaintiff's medical records and conducted a physical examination. Dr. Doonquah concluded that plaintiff more likely sustained the injury related to his work from catching a falling object. This was the only time plaintiff presented to Dr. Doonquah.
23. At his deposition, Dr. Doonquah conceded that he reviewed plaintiff's previous medical records and there was no mention of a work-related injury. Dr. Doonquah's diagnosis, as he stated, came exclusively from the subjective history which was provided by plaintiff.
24. Although Dr. Doonquah related plaintiff's back pain to the March 27, 2009 incident at work, his opinion was expressly based upon the history as reported by plaintiff, and as such, the Full Commission finds Dr. Doonquah's opinion to be based on speculation and gives little weight to his opinion on causation. *Page 8 
25. The Full Commission has considered that plaintiff has limited education and that English is not his native and primary language. Based on the totality of the evidence, the Full Commission finds there were many inconsistencies in the testimony and insufficient credible evidence of record upon which to conclude that plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident or accident on March 27, 2009.
26. Plaintiff continued to work full duty for defendant-employer from the date of his alleged injury through July 27, 2009, when he was laid off. Subsequently, plaintiff worked for several different employers.
27. Neither party has pursued this claim without reasonable grounds.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. An employee seeking benefits bears the burden of proving a particular accident was a causal factor of an injury by a preponderance of the evidence. N.C. Gen. Stat. § 97-2(6);Seay v. Wal-Mart Stores, Inc.,180 N.C. App. 432, 436, 637 S.E.2d 299, 302 (2006).
2. "Where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent evidence as to the cause of the injury."Click v. Pilot Freight Carriers, Inc.,300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). "The evidence must be such as to take the case out of the realm of conjecture and remote possibility, *Page 9 
that is, there must be sufficient competent evidence tending to show a proximate causal relation." Holley v. ACTS, Inc.,357 N.C. 228, 232, 581 S.E.2d 750, 753 (2003) (internal citations omitted).
3. Dr. Doonquah based his opinion as to causation solely on the maxim post hoc ergo propter hoc
(after it, therefore because of it), which is insufficient evidence of causation. Adams v. Metals USA,168 N.C. App. 469, 476, 608 S.E.2d 357, 362 (internal quotation marks, citations, and alterations omitted), aff'd per curiam,360 N.C. 54, 619 S.E.2d 495 (2005).
4. Plaintiff has not presented sufficient evidence to take the case out of the realm of conjecture or possibility, and has failed to carry his burden of proving he sustained a compensable injury by accident or specific traumatic incident in the course and scope of his employment. N.C. Gen. Stat. § 97-2(6); Holley v. ACTS,Inc., supra.
5. To prove disability, plaintiff must show that he was unable to earn the same wages he had earned before his injury, in the same or other employment, and that the incapacity to earn those wages was caused by his compensable injury. Hilliard v. Apex CabinetCo., 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). Plaintiff has failed to carry his burden that he is disabled as a result of an injury by accident occurring in the course and scope of his employment on March 27, 2009. Therefore, plaintiff is not entitled to indemnity or medical compensation. N.C. Gen. Stat. §§ 97-2(6); 97-25.
6. Because neither party pursued any issue in this matter in an unreasonable manner or without reasonable ground, neither party is entitled to attorney's fees as a sanction. N.C. Gen. Stat. § 97-88.1; Sparks v. Mountain BreezeRestaurant, 55 N.C. App. 663, 286 S.E.2d 575 (1982).
 *********** *Page 10 
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the North Carolina Workers' Compensation Act, plaintiff's claim for benefits must be and hereby is denied.
2. Each side shall pay its own costs.
This 27th day of January, 2011.
 S/_______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ LINDA CHEATHAM COMMISSIONER
 S/_________________ DANNY LEE McDONALD COMMISSIONER *Page 1